IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

LARRY LAGRONE and MACK A. BROCK                                    PLAINTIFFS

V.                                                    CIVIL CASE NO.: 1:16-CV-159-SA-DAS

OMNOVA SOLUTIONS, and OMNOVA SOLUTIONS
CONSOLIDATED PENSION PLAN                                          DEFENDANTS

MEMORANDUM OPINION

Plaintiffs Larry Lagrone and Mack Brock brought this action seeking to compel Defendants OMNOVA Solutions, Inc., and the OMNOVA Solutions Consolidated Pension Plan to arbitration following a denial of their claims for Special Early Retirement. Cross-motions for summary judgment have been filed, and the Court finds as follows:

*Factual and Procedural Background*

Larry Lagrone and Mack Brock were employed at OMNOVA Solutions, Inc., in Columbus, Mississippi and were members of the United Steelworkers of America Union while employed at that facility. They were covered under the OMNOVA Solutions Consolidated Pension Plan ("the Plan"). OMNOVA Solutions, Inc., and the Union later amended the Plan in 2007. That document is known as the Agreement for Pension, Service Award and Insurance ("the P & I Agreement"), and is specific to the Columbus, Mississippi plant.

In 2010, the collective bargaining agreement (CBA) under which the Union operated at OMNOVA Solutions, Inc., at the Columbus facility expired when an agreement could not be reached. Thus, pursuant to the terms of the CBA and the P & I Agreement, those contracts expired on May 15, 2010, and the employees engaged in a strike. Additional terms in the P & I Agreement reached between the Company and the Union in 2007 contemplated such a situation

and provided that benefits under the Pension Plan would be continued for ninety days after the termination of the CBA agreement. Accordingly, in this case, the benefits expired on August 15, 2010.[1]

After the benefits ninety day extension passed, both Lagrone and Brock filed claims for a benefit known as "Special Early Retirement" claiming they had the requisite 34 years of continuous service, and had attained the age of 55. Special Early Retirement for the Columbus, Mississippi facility is available for "[a]n Employee who . . . has completed 34 full Years of Credited Service and attained age 55 . . . ." *Plan*, Section B2.4(b), as amended by Schedule B-3. Both Brock and Lagrone turned 55 after August 15, 2010, but before the strike ended in 2012.

Both claims were denied by the Company.

Brock and Lagrone appealed that decision to the Administrative Committee, the entity charged with administering the Pension Plan. *See Plan*, Section 1.2. Both were issued written determinations which contained the same reasoning: Brock and Lagrone were not eligible for the Special Early Retirement benefits as they both turned 55 when they were not "Employees" under the Plan. Under the Plan, "Employee" is defined as

> any person who is regularly employed by the Company and who is a person to whom, or is a member of a group of persons to whom, the benefits of this Non-Contributory Plan have been made and continue to be made available by agreement between the Company and the recognized collective bargaining representative of such group, or by designation by the Company.

*Plan*, Section B1.5.[2] As both Plaintiffs turned 55 after the Plan and CBA were terminated, the Administrative Committee decided that as of August 15, 2010, they were not "person[s] to whom

---

[1] A draft letter from OMNOVA submitted by Plaintiffs for the record indicated that "[p]ension service and benefit accrual with OMNOVA Solutions" would be "discontinued beginning August 16, 2010" but that no benefits earned prior to August 16, 2010 would be lost.

[2] Similarly, under the P & I Agreement, "Employee" is defined as any person "hired prior to May 15, 2007, who is regularly employed by the Company and who is a person to whom, or is a member of a group of persons to whom, the benefits of this Plan have been made and continue to be available by

. . . the benefits of this Non-Contributory Plan . . . continue to be made available by agreement between the Company and the recognized collective bargaining representative of such group . . . ." Again, Brock and Lagrone appealed the decision and demanded "arbitration as provided in Section B-V of the Plan."

The Administrative Committee again denied their claims and noted that Section B-V of the Plan "does not require arbitration of the appeal." The denial letter highlighted that the Section states that differences "*may* be taken up as a grievance under the grievance procedure . . ." and that because the Union was charged with prosecuting that grievance and the Union had been decertified, there was no grievance procedure or Company Grievance Committee to present the claim. Therefore, no decision from the Grievance Committee could be appealed to arbitration.

Thereafter, Plaintiffs filed this lawsuit, and the parties have now filed Cross-Motions for Summary Judgment [20, 25] on the arbitration question.

*Summary Judgment Standard*

"Standard summary judgment rules control in ERISA cases." *Cooper v. Hewlett–Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (quoting *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir. 2004)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

*Choice of Law Provision*

Mississippi generally upholds choice of law provisions in contracts where the contract is valid and binding. *See Williamson Pounders Architects, P.C. v. Tunica County*, No. 2:06cv206-SA, 2007 WL 2903216, *2 (N.D. Miss. July 21, 2008). Neither party addressed the choice of

---

agreement between the Company and the recognized collective bargaining representative of such group, or by designation by the Company. Employees hired on or after May 15, 2007 are not eligible to participate in the Pension Plan.

law issue, but the contracts at issue specifically state Ohio state law shall be applied. *Plan*, Section 7.7; *P & I Agreement*, Section VII (Plan "shall be" construed and administered under Ohio law). Accordingly, the Court henceforth reviews the duty and authority of the Plan Administrator under Ohio law.[3]

*Discussion and Analysis*

Defendants claim that arbitration is not necessary because the Administrative Committee is charged with interpreting the Plan, and the Committee determined that the Plan did not mandate arbitration of this issue.

Pursuant to the Plan, the "Administrative Committee" is charged with the administration of the Plan and "shall establish rules for the administration of the Plan and the transaction of its business." *Plan*, Section 4.2. Some duties of the Administrative Committee include: granting benefits, interpreting and applying the provisions of the Plan, and making, amending, repealing, and enforcing such rules it may deem necessary for the efficient operation of the Plan. *Id.* at 4.3. Additionally, the Committee is tasked with resolving ambiguities, inconsistencies and errors in the Plan. *Id.* Section 5.4 notes that decisions of the Administrative Committee shall be "final and binding on the Company and the Employee, Participant, Beneficiary or other claimant unless a court having jurisdiction of the matter under ERISA determines that such decision was arbitrary and capricious."

Because the Plan documents gave the Administrative Committee discretion to construe and interpret the Plan, the Court reviews the Administrative Committee's determination under the arbitrary and capricious standard. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 103, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d

---

[3] Even if the Court construed the contract pursuant to Mississippi and Fifth Circuit law, the result would be the same.

979, 983 (6th Cir. 1991). The arbitrary and capricious standard is the least demanding form of judicial review of an administrative decision. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citation omitted); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (en banc).

In applying the arbitrary and capricious standard in ERISA actions, a court is limited to reviewing the evidence contained within the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). "An exception is recognized, however, when evidence outside the record 'is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.'" *Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009) (quoting *Wilkins*, 150 F.3d at 619). In instances involving such challenges, evidence outside the record may be relevant and discoverable. *Id.*; FED. R. CIV. P. 26(b)(1). That exception is available here as Plaintiffs have brought forth evidence of similarly situated claimants being accorded differing due process than offered to these Plaintiffs.

In an earlier case before this Court, two different plaintiffs, Mordecai and Fowler, filed a Complaint for Special Early Retirement Benefits against OMNOVA Solutions Consolidated Pension Plan. *Fowler v. OMNOVA Solutions Consolidated Pension Plan*, 1:13cv118-SA-DAS (N.D. Miss. June 20, 2013). Prior to any Court determination, the parties filed a *Stipulation of Remand and Voluntary Dismissal without Prejudice*. In that Stipulation, the parties agreed that the plaintiffs would present their claims to the Administrative Committee for a decision, they could then appeal that decision to the Administrative Committee to issue a final decision. At that

5

point, the parties stipulated that "[i]f the Administrative Committee denies Plaintiffs' special early retirement benefits claims on appeal, the parties agree to forego the Plan mandated grievance step and proceed directly to arbitration of these claims as set forth in Plan Article B-V." *Fowler*, 1:13cv118-SA, *Stipulation of Dismissal* [28] (N.D. Miss. Jan. 22, 2014).

The Administrative Committee denied Fowler and Mordecai's claims and the case proceeded to arbitration. Both plaintiffs attained the age of 55 after the August 15, 2010 deadline, just as here. The Arbitrator found that because the plaintiffs were retained in an employment status as "striking employees" by the Company until July 30, 2012, they were "Employees" under the Plan until that date. The Arbitrator granted Special Early Retirement Benefits to Plaintiff Mordecai as he had accrued 34 years of continuous service while the P & I Agreement was still in effect. Plaintiff Fowler, however, did not accrue sufficient years of service prior to the expiration of the benefits extension period, and those special early retirement benefits were denied to him.

Pertinent here, the Administrative Committee has taken two inconsistent positions. In this case, the Administrative Committee charged with administering and interpreting the Plan, found that arbitration was not mandated by the Plan. However, by Stipulation in the Mordecai and Fowler case, they admitted that there is a "mandated grievance step" which leads to arbitration.

"An important factor in determining whether the administrator's interpretation of plan language was arbitrary and capricious is whether the administrator has consistently interpreted and applied the terms of the Plan in the past." *Adams v. Anheuser–Bush Co., Inc.*, 917 F. Supp. 2d 697, 714, 2013 WL 123084, *15 (S.D. Ohio 2013); *Rhoton v. Central States, Se & Sw Areas Pension Fund*, 717 F.2d 988, 991 (6th Cir. 1983) ("[C]onsistent past interpretation and application of a pension plan is relevant to the reasonableness of a challenged [ ] decision . . . .").

6

Although the Plan language states that differences "may" be taken up pursuant to the grievance procedure, the Administrative Committee's determination that such procedure is mandated is an inconsistent application of the pension Plan. To be clear, the inconsistency is not that the parties arbitrated in that case and did not with these Plaintiffs. The arbitration in Mordecai and Fowler's case was by express agreement between those parties outside the Plan document. The inconsistency is the Administrative Committee's interpretation of the process outlined in the Plan – permissive versus mandatory.

Accordingly, the Administrative Committee's inconsistent interpretation of the appeals procedure is a factor in this Court's determination of whether that decision was arbitrary and capricious. As noted below, the plain language of the Plan enumerates "age" as an issue subject to arbitration. While the Defendants attempt to paint this determination based on the definition of "Employee", it is clearly an issue of whether the Plaintiffs attained the appropriate age to be eligible for the Special Early Retirement benefits. Thus, the explicit contract language together with the inconsistent application in the prior case, make it impossible for Defendants to "offer a reasoned explanation based on the evidence." *Davis*, 887 F.2d at 693. Thus, the Administrative Committee's decision as to Lagrone and Brock was arbitrary and capricious.

"[W]hether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract between the parties." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Where an agreement contains an arbitration clause, a presumption of arbitrability arises. *AT & T Technologies, Inc. v. Comm. Workers of America*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). This presumption may only be overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute. Doubts should be resolved in favor of coverage." *Id.*, 106 S. Ct. 1415 (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 582-583, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960)). The role of the court is limited to determining whether "the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers*, 363 U.S. at 564, 80 S. Ct. 1343.

In Article B-V, the provisions states as follows:

> If any difference shall arise between the Company or the Administrative Committee and any Employee who shall be an applicant for benefits, or Pensioner as to:
>
> > (a) the number of Years of Credited Service of such Employee or Pensioner, or
> >
> > (b) the age of such Employee or Pensioner, or
> >
> > (c) the amount of pension or other benefit to which an Employee or Pensioner is entitled under this Plan, or
> >
> > (d) whether such Employee or Pensioner, if he shall have been determined to be Permanently Disabled but shall not have reached his Normal Retirement Date, became Permanently Disabled through some unavoidable cause,
>
> and if agreement cannot be reached between the Administrative Committee and the Employee or Pensioner, such question may be taken up as a grievance under the grievance procedure provided for in the applicable labor agreement at the level at which a grievance is presented to the Company's grievance committee. If any such grievance shall be taken before an impartial umpire in accordance with such procedure, then the impartial umpire shall have the authority only to decide the question pursuant to the provisions of this Plan applicable to the question, but he shall not have the authority in any way to alter, add to or subtract from any of such provisions.
>
> The decision of the impartial umpire on any such question shall be binding on the Company, the Administrative Committee and the Employee or Pensioner and all other interested parties.
>
> Termination of the labor agreement shall not invalidate the use of its grievance procedure for the purposes of this paragraph.

Defendants do not contend that the arbitration agreement at issue here is not binding on either party, only that it does not apply in this instance. Indeed, the parties' willingness to give an "impartial umpire" binding authority to decide the questions presented shows intent to forego courts and settle disputes by means of a private tribunal. *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Defiance Indus., Inc.*, 251 F. Supp 650, 653 (N.D. Ohio 1966) (contracts mention of an "impartial tiebreaker" evidence of intent to arbitrate). Thus, the Court must determine whether Plaintiffs are "making a claim which on its face is governed by the contract." *United Steelworkers*, 363 U.S. at 564, 80 S. Ct. 1343.

Plaintiffs paint the question presented to the Company, then Administrative Committee as one regarding the "age of such Employee or Pensioner," while the Company and Administrative Committee viewed this issue as an eligibility question revolving around whether the Plaintiffs were "Employees" under the Plan. Whether a contract commits a dispute to arbitration, the Supreme Court has held, is a question of arbitrability for the courts to decide. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002); *John Wiley & Sons*, 376 U.S. at 547, 84 S. Ct. 909. Whether the parties have "complied with the procedural requirements for arbitrating the case, by contrast, is generally a question for the arbitrator to decide." *United SteelWorkers of America, AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 420 (6th Cir. 2007) (citing *Howsam*, 537 U.S. at 85, 123 S. Ct. 588; *John Wiley & Sons*, 376 U.S. at 556–57, 84 S. Ct. 909). If doubt exists over whether a dispute falls on one side or the other of this line, the presumption in favor of arbitrability makes the question one for the arbitrator. *AT & T Techs., Inc.*, 475 U.S. at 650–51, 106 S. Ct. 1415; *see*

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (recognizing a "liberal federal policy favoring arbitration agreements").

Plaintiffs' claims are clearly covered by the arbitration contract. The heart of the dispute concerns the age of the claimants here. Alternatively, the Administrative Committee admits that Plaintiffs may be entitled to other retirement benefits under the Plans, despite its determination as to the Special Early Retirement benefits. Thus, the inquiry presented is "(c) the amount of pension or other benefits to which an Employee or Pensioner is entitled under this Plan . . . ," which is necessarily subject to the arbitration provision. Plaintiffs' claims are subject to arbitration.

Defendants contend that a condition precedent to arbitration has not been satisfied, namely that the Plaintiffs did not appeal through the union grievance procedure. Defendants acknowledge that such a procedure no longer exists as the Union has been decertified. Questions of whether conditions precedent to arbitration have been satisfied "are presumptively not for the judge, but for an arbitrator, to decide." *Howsam*, 537 U.S. at 84, 123 S. Ct. 588. The Supreme Court has noted that "whether the prerequisite steps of a grievance procedure have been followed" is explicitly within the ambit of procedural arbitrability, and thus a function of the arbitrator. *Id*. at 84, 123 S. Ct. 588; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S. Ct. 927 ("[I]n the absence of an agreement to the contrary, issues of substantive arbitrability ... are for a court to decide and issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."). Thus, whether the parties have satisfied the conditions precedent to arbitration are issues for the arbitrator, not the court.

*Conclusion*

The presumption in favor of arbitration has not been overcome in that the arbitration clause at issue could be susceptible to an interpretation covering the asserted dispute. *See AT&T Tech.*, 475 U.S. at 650, 106 S. Ct. 1415. Accordingly, the Court compels arbitration in this case based on the Plan language and reasoning above.

The arbitrator in this case will need to determine if any other administrative procedures are needed to exhaust administrative remedies in this case and what benefits are available to the Plaintiffs.

Plaintiff's Motion for Summary Judgment to compel arbitration is GRANTED, and Defendant's Cross-Motion for Summary Judgment is DENIED. This case is hereby referred to arbitration.

SO ORDERED, this the 31st day of March, 2018.

                                                  /s/ Sharion Aycock
                                                  **U.S. DISTRICT JUDGE**